IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Vermell D. Pyatt, | ) | |
| | ) | |
| Plaintiff, | ) | C/A No. 3:10-2002-MBS |
| | ) | |
| vs. | ) | **OPINION AND ORDER** |
| | ) | |
| Harvest Hope Food Bank, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Vermell D. Pyatt ("Plaintiff") filed this action against her former employer Defendant Harvest Hope Food Bank ("Defendant"), a nonprofit organization, on July 30, 2010, alleging that she was subjected to race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. (ECF No.1.) Defendant denies Plaintiff's allegations and has filed a motion to dismiss or for summary judgment. (ECF Nos. 5 & 25.)

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this action was referred to United States Magistrate Judge Paige J. Gossett for pretrial handling. On February 1, 2012, the Magistrate Judge issued a Report and Recommendation in which she recommends that Defendant's motion for summary judgment be granted and the case be dismissed. (ECF No. 54.) Plaintiff filed objections to the Report and Recommendation on March 6, 2012, (ECF No. 58), to which Defendant filed a reply on March 8, 2012. (ECF No. 59.)

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court reviews *de novo* only those portions of a Magistrate Judge's report and recommendation to which specific objections are filed, and

reviews those portions which are not objected to—including those portions to which only "general and conclusory" objections have been made—for clear error. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983); Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir 1982). The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The court has considered the pleadings, memoranda, deposition and affidavit testimony, and the exhibits offered by the parties in support of their respective positions. For the reasons set forth below, the court ADOPTS the Report and Recommendation of the Magistrate Judge and GRANTS Defendant's motion for summary judgment with respect to all of Plaintiff's claims.

**FACTS**

The following facts are either undisputed or taken in the light most favorable to Plaintiff, to the extent they are supported by the evidence of record. Plaintiff is an African-American female who was hired in December 2005 by Defendant as a Data Analyst for Hunger and Poverty. (ECF No. 52-1, 2 ¶¶ 3-4.) As a Data Analyst, Plaintiff collected, analyzed and traced Defendant's Food Bank food poundage for over 300 member agencies. (ECF No. 52-1, 4.) Plaintiff became involved in poundage reporting to the South Carolina Department of Social Services and Feeding America in January 2008. (Id. at 5.)

Plaintiff was employed as an hourly employee and was paid at a rate of $13.85 per hour. (ECF No. 25-3, 9) In April 2006, at Plaintiff's ninety-day review, Plaintiff received a positive performance evaluation from Defendant's Executive Director Denise Holland ("Holland"). (Id. at 2-9.) Defendant changed Plaintiff's status from an hourly employee to a salaried employee and gave

2

Plaintiff a pay increase on March 20, 2006. (Id. at 9,10.)

Sometime during 2006, a co-worker named "Gloria" questioned Plaintiff about her education. (ECF No. 52-1, 2 ¶ 6.) Plaintiff advised Gloria that Plaintiff had two master's degrees from the University of South Carolina and Gloria indicated that it was unusual for a black person to have two masters degrees.[1] (Id.) Gloria also made negative comments to Plaintiff about Plaintiff's grandmother, who was white. (Id. at 3.) Gloria's comments offended Plaintiff and Plaintiff reported them to Holland sometime in 2006. (ECF No. 53-2, 5.)

On April 26, 2007, Plaintiff received a positive performance evaluation and received another pay raise. (ECF 25-3, 11-20.) Sometime between 2007 and 2008, Plaintiff indicated that Holland would occasionally bring a pizza in for lunch and the front office, which is composed of white individuals, "would get their share of it first and then they would leave it back there on the table open for the warehouse workers" who were "largely black and largely white." (ECF No. 53-2.) Plaintiff told Holland she thought it was wrong to make the warehouse workers eat after the front office workers. (Id.) Holland listened to Plaintiff's concerns and stated that they "would find better ways." (ECF No. 52-2, 7.)

In April 2008, Plaintiff once again received a positive performance review and Plaintiff again received a pay raise. (Id. at 21-32.) In October 2008, Plaintiff allegedly was instructed to reallocate poundage data on the monthly reports Plaintiff prepared. (ECF No.52-1, 6.) Plaintiff was involved in numerous meetings with Defendants regarding the validity of poundage reporting, as the poundage

---

[1] The Magistrate Judge pointed out that Plaintiff's original version of this incident as described in her deposition conflicts with her affidavit and relates only that Gloria remarked that Plaintiff must be really smart to have two degrees from the University of South Carolina. (Compare ECF. No. 52-2, 5 with ECF No. 52-1, 2 ¶ 6.)

3

was being reallocated among the counties according to the reports, but the counties did not actually reallocate the food. (Id.) In December 2008, Defendant reviewed its personnel practices to ensure it was in compliance with the Fair Labor Standards Act. (Id. at 33-34.) As a consequence of this review, several positions, including Plaintiff's position, were reclassified from exempt to non-exempt. (Id.) Plaintiff's method of pay was changed from a salaried position back to an hourly position at a rate of $19.50 per hour. (Id.) Plaintiff's pay was not decreased, it was merely calculated on an hourly basis. (Id.) Plaintiff was advised that her salary was changed from salaried to hourly because she did not supervise employees. (ECF No. 52-1, 3.) Plaintiff spoke to Holland about white employees who were still classified as salaried employees and were not supervising employees. (Id.) After talking with Holland, Plaintiff allegedly observed family members of employees and board members being placed under the supervision of white salaried employees. (Id.)

In January 2009, Plaintiff met with Defendant to discuss how the new method of reallocating the poundage of member agencies serving multiple counties was not effective. (Id. at 6-7.) Defendant instructed Plaintiff to adjust the poundage report to meet the proper percentages. (Id.) In May or June 2009, Plaintiff advised Defendant that Plaintiff would not alter data in the reports she generated because she did not want to go to jail for altering data. (ECF No. 25-2, 2.) Thereafter, on or about August 17, 2009, Plaintiff's position was transferred from the Agency Relations Department located on Shop Road in Columbia, South Carolina, to the Development Department located at Defendant's Columbia Mall office. (ECF No.1 ¶ 15.) Plaintiff's transfer was prior to the Feeding America Compliance Inspection at Defendant's Shop Road location. (ECF No. 52-1, 7.) Plaintiff indicated that the transfer to the Columbia Mall location made it more difficult for Plaintiff to perform her duties because the information she needed to perform her job was

4

primarily located at Defendant's Shop Road location. (Id. at 7.)

From on or around August 18, 2009 until October 5, 2009, Plaintiff was under the care of her Nurse Practitioner. (See ECF No. 25-3, 38-39.) Plaintiff's Nurse Practitioner instructed Plaintiff to work from home due to work related stress. (ECF No. 25-3, 41.)

On September 16, 2009, while working from home, Plaintiff filed a Charge of Discrimination against Defendant with the South Carolina Human Affairs Commission ("SHAC"). (Id. at 45-46.) Plaintiff alleged she suffered harm because she: (1) was subjected to disparate terms and conditions through May 13, 2009, and continuing; (2) was denied a promotion to Director of Government Relations and Grant Management on or about August 5, 2009; (3) was transferred to a different location on or around August 17, 2009; and (4) was denied equal pay wages through September 3, 2009 and continuing. Plaintiffs further alleged inter alia that: (1) white employees are treated more favorably than black employees; (2) when she reported an insubordinate employee, her complaint was brushed off and treated as insignificant, while white employees' complaints are taken more seriously; (3) she was instructed to give tours to black visitors even though Defendant had white staff available that normally give the tours; (4) she was told that she could not work any more overtime because she had too much overtime, and (5) white employees were allowed to report to work late and leave early and still get paid for the entire day while she had to clock in and out and account for all her time. (Id. at 45.) Plaintiff did not file a complaint of discrimination with Defendant prior to filing her Charge of Discrimination with SHAC. (ECF. No. 53-2, 2.)

Plaintiff talked with Holland about her concerns but did not file a complaint of discrimination with Defendant prior to filing her Charge of Discrimination with the SHAC. (ECF No. 53-2, 2.) At her deposition, when responding to a question about the reason Plaintiff filed her charge of racial

5

discrimination and retaliation with the SHAC, one reason Plaintiff gave for filing the charge was because Plaintiff thought her transfer to Defendants Columbia Mall location was in retaliation for Plaintiff's refusal to alter data. (ECF No 25-4, 2.)

On September 17, 2009, Defendant received a letter from Deborah Hassler A.C.N.P., of Mid Carolina Internal Medicine that indicated Plaintiff had incurred work-related stress that had affected her health. (ECF No. 25-3, 41.) Nurse Practitioner Hassler requested that Defendant allow Plaintiff to work from home for at least two weeks. (Id.)

On October 2, 2009, after Plaintiff had been working from home for approximately seven weeks, Defendant informed Plaintiff that she could no longer work from her home and offered Plaintiff the opportunity to take unpaid medical leave. (Id. at 42.) On October 9, 2009, Plaintiff submitted a letter of resignation to Defendant. (Id. at 47.) In the letter, Plaintiff stated that her doctor had advised her that work-related stress was adversely affecting her health. (Id.) Plaintiff did not attach any medical documentation with her letter of resignation.

Although the record does not reflect when the following events occurred, Plaintiff described in her deposition other incidents wherein either Plaintiff perceived that she was subjected to disparate treatment or where other black employees were subjected to disparate treatment. Plaintiff indicated that on one occasion Holland asked Plaintiff her opinion on bi-racial couples and another occasion Plaintiff also alleges she witnessed black workers being disciplined for horseplay in Defendant's warehouse whereas white employees were not disciplined for horseplay. (ECF 52-1, 3).

**STANDARD OF REVIEW**

Summary judgment is appropriate only if the moving party "shows that there is no genuine

dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir.1987) (emphasis in original) (internal quotation marks & citation omitted). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir.2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

# DISCUSSION

**I.  Racial Discrimination**

Title VII makes it "an unlawful employment practice for an employer . . . to discharge . . . or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ". 42 U.S.C.A. § 2000e-2(a)(1). A plaintiff may prove a Title VII discrimination claim against her employer through direct evidence of racial discrimination or by using circumstantial evidence and the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to create an inference of discrimination. Lightner v. City of Wilmington, 545 F.3d 260 (4th Cir. 2008); Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284-86 (4th Cir. 2004) (en banc).

To establish a *prima facie* case of disparate treatment based on race, a plaintiff must show: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) at the time of the adverse employment action she was performing up to her employer's legitimate expectations; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class. Miles v. Dell, Inc., 429 F.3d 480, 485 (4th Cir. 2005) (quoting Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 285 (4th Cir. 2004) (en banc).).

If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for its employment action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010). This is merely a burden of production, not a burden of persuasion. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993). Then, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason for its employment action, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the

proffered reason was "not its true reason[ ], but [was] a pretext." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). Throughout the burden shifting scheme set forth in McDonnell Douglas, the ultimate burden of proving that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

**A.     The Magistrate Judge's Report and Recommendation**

The Magistrate Judge found that Plaintiff had not established a *prima facie* case of discrimination because Plaintiff had not proven factor two listed above, that she suffered an adverse employment action. (ECF No. 54, 7.) The Magistrate Judge acknowledged that Plaintiff contends she was constructively discharged, and that the parties appeared to agree that a constructive discharge is an adverse employment action under Title VII. (Id.) Further, the Magistrate Judge indicated that to establish a claim for constructive discharge, Plaintiff must show that Defendant created intolerable working conditions in a deliberate effort to force Plaintiff to resign. Whitten v. Fred's, Inc., 601 F.3d 231 (4th Cir. 2010); Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1353-54 (4th Cir. 1995).

More specifically, the Magistrate Judge found that the circumstances described by Plaintiff as compelling her to resign did not meet the standard for a constructive discharge. (ECF. No. 54, 8.) First, the Magistrate Judge found that the record did not support Plaintiff's contention that she was subjected to racially offensive remarks throughout her employment. (Id. at 8) The Magistrate Judge noted that Plaintiff identified only three remarks–two from Gloria and one from Holland. (Id. at 8, 9.) These remarks were made early in Plaintiff's tenure with Defendant, years before Plaintiff resigned in the fall of 2009. (citing Lindsey v. One Source, C/A No. C-05-571, 2006 WL 3360285, at *7 (S.D. Tex. Nov. 20, 2006) (finding that racially derogatory remarks that occurred over eight

9

months before the plaintiff's resignation and were no longer happening when the plaintiff resigned could not form the basis of a constructive discharge)). (Id. at 9.)

Next, the Magistrate Judge also found Plaintiff's contention that she was subjected to disparate treatment because of her reclassification from a salaried to an hourly employee had no merit. The Magistrate Judge noted a white employee was also reclassified. The Magistrate Judge further observed that Plaintiff's remuneration was not decreased; therefore, the reclassification did not constitute an adverse employment action. (Id.)

The Magistrate Judge further found that Plaintiff's argument that black employees were disciplined for "horseplay," while white employees were not, did not support Plaintiff's claim of an adverse employment action because the record did not indicate that Plaintiff herself had ever been disciplined for this behavior. (Id.) (citing Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 187 n.2 (4th Cir. 2004) (stating that constructive discharge theory protects an employee from a calculated effort to pressure him into resignation by imposing unreasonably harsh conditions, in excess of those faced by his co-workers)).

Likewise, the Magistrate Judge found that Plaintiff's argument that her transfer to the Columbia Mall office made it more difficult for her to perform her data analysis was both insufficient as a matter of law and illogical. (Id. at 10.) The Magistrate Judge noted that Plaintiff's contention is contrary to Plaintiff's own testimony that she performed her job at home for seven weeks—away from the Shop Road headquarters—in a satisfactory manner. (ECF No.52-1 at 4.) Further, the Magistrate Judge pointed out that increased stress or circumstances that make a job more difficult cannot alone support a constructive discharge or adverse employment action. See Honor, 383 F.3d at 187 n.2 (stating that an employee is not guaranteed a working environment free of

stress).

The Magistrate Judge also found that Plaintiff's argument that stress from work adversely affected her health was not sufficient to establish an adverse employment action because Plaintiff presented no medial evidence to establish a causal connection between Defendant's alleged racially offensive conduct and Plaintiff's health. (ECF No. 54, 10.) The only evidence Plaintiff presented to support Plaintiff's argument that stress was adversely affecting Plaintiff's health was her own opinion that she had to quit her job because of her health.

Finally, the Magistrate Judge found that the record contained insufficient evidence to show that Defendant deliberately created an intolerable working environment in excess of that faced by her co-workers to force Plaintiff to resign. (ECF 54, 11) The Magistrate Judge recited from the record that it is undisputed that Defendant initially approved Plaintiff's request to work from home for two weeks, extended that time repeatedly, and then ultimately offered Plaintiff the opportunity to request an unpaid medical leave of absence. (Id. at 11.) The Magistrate Judge also indicated that Plaintiff's failure to seek redress from Defendant prior to her resignation bars her claim based upon constructive discharge. See Scott v. Ameritex Yarn, 72 F. Supp. 2d 587, 595 (D.S.C. 1999); see also Perry v. Harris Chernin, Inc., 126 F.3d 1010, 1015 (7th Cir. 1997) ("[U]nless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress.").

However, assuming Defendant's actions could be considered to be adverse employment actions within the meaning of the applicable Title VII, the Magistrate Judge found that Plaintiff would still not prevail because Defendant has offered a legitimate nondiscriminatory reason for each alleged discriminatory action set forth by Plaintiff. (Id. at 12.) For example, Plaintiff asserted that

11

the reason Defendant provided for her reclassification, that she did not supervise any employees, was false. (Id.) The Magistrate Judge found that even if Defendant's stated reason for the reclassification was false, there was abundant and unrefuted evidence in the record that showed that the reclassification was not based on any discriminatory animus. (Id. & ECF No. 54, 12.)

Plaintiff also argued that Defendant's stated reason that reporting to work was an essential function of her job and that she could no longer work from home was a pretext because a white employee, Amy Lowery, was allowed to work at home. The Magistrate Judge, after reviewing the record, determined that Amy Lowery was not a valid comparator. Specifically, the Magistrate Judge found that Plaintiff's and Lowery's duties differed vastly and they were not subject to the same standard; thus Plaintiff could not show that she and Lowery were similarly situated in all relevant respects. See McGuinness v. Lincoln Hall, 263 F.3d 49, 53-54 (2d Cir. 2001) (emphasizing that an employee must be similarly situated in all material respects). Thus, the Magistrate Judge found that Plaintiff had not presented evidence sufficient to show that Defendant's proffered reason was a pretext. (Id. at 12.)

**B.    Plaintiff's Objections**

1.    Plaintiff first objects to the Magistrate Judge's determination that Plaintiff did not present sufficient evidence to prove she was constructively discharged. (ECF No. 58, 2.) Plaintiff contends that it "appears" that the Magistrate Judge did not consider the affidavit of Plaintiff's minister James Richard ("Richard") and evidence from Plaintiff's Nurse Practitioner about the need for her to work at home because of her health.

Richard testified in an affidavit that Plaintiff had confided in him that she allegedly was being directed by her supervisors to manipulate data before it was sent to national agencies. (ECF No. 52-2

¶ 10.) Richard averred that he stated to her he was afraid the manipulation of data was illegal and questioned who was directing her to do so. (Id. ¶ 11.) Richard suggested Plaintiff seek medical attention because she appeared to be suffering from a lack of sleep and was agitated. (Id. ¶ 13.) Upon review, whether the Magistrate Judge considered or did not consider Richard's affidavit is of no consequence since Richard's testimony does not support Plaintiff's contentions of race discrimination. To the contrary, Richard's testimony suggests Plaintiff's stress stemmed from allegedly being directed by her supervisors to alter data, a possible illegal activity, not from intolerable working conditions based on race. See Lightner v. City of Wilmington, 545 F. F.3d 260, 263-64 (4th Cir. 2008) (finding that a plaintiff's repeated admission of wrongdoing during litigation that the real reason for his suspension was to cover up department wrongdoing wholly undermined plaintiff's claim of race or gender discrimination under Title VI).

Next, Plaintiff asserts that the Magistrate Judge disregarded evidence that was submitted to the court by Plaintiff's Nurse Practitioner. In a letter dated, September 17, 2009, Plaintiff's Nurse Practitioner indicated that work-related stress was affecting Plaintiff's health (ECF No. 58-1.) Plaintiff's Nurse Practitioner requested that Plaintiff be allowed to work from home for "at least the next 2 weeks." (Id.) This letter does not indicate that stress had any relation to intolerable working conditions based on race or racial discrimination. Therefore, the Magistrate Judge did not err in finding the letter did not support Plaintiff's claim that she suffered an adverse employment action by constructive discharge.

In her continued effort to show that she had suffered an adverse employment action, Plaintiff submits, through her objections, evidence that was not presented to the Magistrate Judge for consideration. First, she submitted an undated and unsigned document labeled "Harvest Hope Food

Bank Timeline Events September 2004-October 2009." Next, Plaintiff submitted deposition testimony from a different trial that Plaintiff did not participate in and deposition testimony about a motivational speaker. This court has discretion to consider additional evidence not presented to a Magistrate Judge. See 28 U.S.C. § 636(b)(1); Carpet Group Int'l v. Oriental Rug Importers Ass'n, Inc., 227 F.3d 62, 72 (3d Cir. 2000); Fed. R. Civ. P. 72(b). However, since the additional evidence that Plaintiff seeks to now present was available for presentation to the Magistrate Judge, this court declines to consider it. See Callas v. Trane CAC, Inc., 776 F. Supp. 1117 (W.D. Va. 1990). A party may not "hold back" in the proceeding before the Magistrate Judge, hoping to submit additional affidavits or exhibits to the District Judge in objection to the Magistrate Judge's determination. Id. at 1119. Consideration of efficiency and fairness militate in favor of a full evidentiary submission to the Magistrate Judge for consideration. See, e.g., Hynes v. Squillace, 143 F.3d 653, 656 (2d Cir. 1998).

For the reasons stated, Plaintiff's objections to the Magistrate Judge's determination that Plaintiff did not suffer an adverse employment action and was not constructively discharged on account of her race are without merit.

2. Plaintiff next objects to the Magistrate Judge's finding that Plaintiff introduced insufficient evidence to show that Defendant acted with deliberateness. (ECF No. 58, 4.) Here, Plaintiff sets forth a general objection to the Magistrate Judge's determination. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983); Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982.) The arguments presented in support of this objection are essentially the same arguments Plaintiff presented to the Magistrate Judge in opposing summary judgment and have been thoroughly addressed by the Magistrate Judge.

Plaintiff's objection is without merit.

3. Plaintiff objects to the Magistrate Judge's finding that Amy Lowery, a white co-worker, was not similarly situated to Plaintiff. (ECF No. 58, 5.) Plaintiff had argued she and Lowery were similarly situated in an effort to show Defendant's contention that "coming to work was an essential function of Plaintiff's job" was a pretext. In her objection, Plaintiff's additional arguments are nothing more than conclusory statements that are unsupported by the record in an attempt to show Lowery was a valid comparator. (ECF No. 58, 7); see Jones v. Siefer, 808 F. Supp.2d 900, 920 (S.D.W. Va. 2011) noting ("conclusory allegations or unsupported speculation, without more are insufficient to preclude the granting of a summary judgment motion"). After considering Plaintiff's objection, the court concurs with the Magistrate Judge's determination that Lowery was not a valid comparator and Plaintiff's argument was not probative to show Defendant's stated reason for disallowing Plaintiff to work from home was a pretext. Plaintiff's objection is without merit.

4. Plaintiff next objects to the Magistrate Judge's finding that Plaintiff was not meeting her employer's job expectations. (ECF No. 58, 8.) Upon review, the court finds this objection has no merit. The Magistrate Judge did not make a finding that Plaintiff was not meeting her employer's job expectations nor did the Magistrate Judge weigh the evidence as Plaintiff suggests. Instead, the Magistrate Judge properly noted that Plaintiff had made contradictory statements when discussing whether or not Plaintiff's transfer to the Defendant's Columbia Mall location was an adverse action. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) (court should give credence to evidence that is uncontradicted and unimpeached). One argument Plaintiff set forth was that the transfer to Defendant's Columbia Mall location made it more difficult for Plaintiff to

perform her duties because Plaintiff was not at the location where the data she needed to perform her job responsibilities were located . (ECF No. 52-1,7.) However, she also argued that during the seven weeks she worked at home, there was no negative impact. (Id., 4.) Plaintiff's arguments contradicted each other. (See Id., 4,7) The Magistrate Judge highlighted the contradiction between Plaintiff's arguments. Thus, Plaintiff's objection is without merit.

## II. Retaliation

Title VII protects individuals from retaliation by providing that it is an "unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, . . . in any manner in an investigation . . . under this subchapter." 42 U.S.C.A. § 2000e-3(a). To demonstrate a *prima facie* case of retaliation under Title VII, a plaintiff must show "(1) that she engaged in protected activity; (2) that her employer took an adverse employment action against her; and (3) that a causal connection existed between the protected activity and the asserted adverse action." See Munday v. Waste Mgmt. of North America, Inc., 126 F.3d 239, 242 (4th Cir. 1997). As to the first element, "[o]pposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." Laughlin v. Metropolitan Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998). "As long as an employee complains to his or her employer or participates in an employer's informal grievance procedure in an orderly and nondisruptive manner, the employee's activities are entitled to protection under § 704's opposition clause." Kubicko v. Ogden Logistics Serv., 181 F.3d 544, 551 (4th Cir. 1999). A plaintiff meets the second element of this test if "a reasonable employee would have found the challenged action materially adverse,"

meaning that it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). The third element of the test may be satisfied merely by close temporal proximity between the protected activity and the adverse employment action. See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001).

A.   **The Magistrate Judge's Report and Recommendation**

The Magistrate Judge found that Plaintiff had not established a *prima facie* case of retaliation under Title VII because Defendant failed to show that she suffered an adverse action. (ECF 54, 17.) The Magistrate Judge acknowledged that Plaintiff had identified two alleged retaliatory adverse actions: (1) her transfer to Defendant's Columbia Mall location for voicing opposition to Defendant's disparate treatment of African-Americans and for her refusal to alter poundage data for reporting purposes, and (2) constructive discharge. (ECF 54, 16-18.) The Magistrate Judge found that Plaintiff had not established a causal connection between Defendant's alleged retaliation against Plaintiff and Plaintiff's protected activity. (ECF 54, 17.)

B.   **Plaintiff's Objections**

Plaintiff objects to the Magistrate Judge's finding that Plaintiff had not established a claim for Title VII retaliation. Specifically, Plaintiff argues a causal connection exists in that her transfer to Defendant's Columbia Mall location and Defendant's denial of her request to work from home occurred within a few months of her last complaints of race discrimination.[2] Plaintiff's argument

---

[2] Plaintiff presented a different argument to the Magistrate Judge. Before the Magistrate Judge, Plaintiff argued that although there was not a temporal proximity between her alleged complaints of discrimination and Defendant's alleged retaliation, Plaintiff could establish a causal connection through an alleged pattern and practice of discriminatory actions. Plaintiff argued that such a pattern and practice "evidences a retaliatory animus sufficient to negate any alleged deficiency in temporal

is not supported by the record. Plaintiff's complaints of alleged discrimination were made between 2006-2008. (ECF No. 25, 17-18.) Further, as previously discussed, Plaintiff's refusal allegedly to alter data is not an activity protected by Title VII. The court has carefully considered Plaintiff's arguments in opposition to the Magistrate Judge's finding that Plaintiff failed to set forth a claim for retaliation and find they have no merit. Plaintiff's objection is without merit.

## CONCLUSION

After *de novo* review of the record, the court determines that Plaintiff's objections to the Report and Recommendation are without merit and are overruled. Accordingly, the court adopts the Report and Recommendation and incorporates it herein. Defendant's motion for summary judgment (ECF No. 25) is **granted**.

**IT IS SO ORDERED.**

/s/ Margaret B. Seymour
Chief United States District Judge

Columbia, South Carolina

March 29, 2012.

---

proximity." The Magistrate Judge found that the record did not contain evidence of such a pattern and practice. (ECF 53, 12-13.)